County, care of Drew Alexander, Sheriff of Summit County, Sheriff's Office, et al. Oral argument not to exceed 15 minutes per side. Mr. Ludwig, for the Plaintiff Appellant, Cross Appellate.   Morning. Morning. May it please the Court, I'd like to divide 11-4. May it please the Court, opposing counsel, and with the Court's permission, Mrs. Ludwig. I'm privileged to represent Jillian Hobbs, and we pray that this Court agrees that there is a significant 1983 civil rights issue presented in this case that warrants the attention of the District Court. On de novo review, this Court should hold that Heck v. Humphrey's favorable termination requirement did not bar her claims in the District Court, and thus it should reverse the dismissal for lack of subject matter jurisdiction of her complaint. I will repeatedly emphasize the well-reasoned, well-written opinion of this Court in Graves in 2013, which addressed the limits of Heck, and explained prior precedents of this Court about the limits of Heck. We would also ask this Court to apply the properly deferential abuse of discretion standard to affirm the District Court's exercise of sound discretion of extension of time to allow this appeal. This case is fundamentally about a multi-part form. And what Summit County had done for years is this. After you were arrested, they filled out a complaint, most often a bare-bones complaint. The officer swore in front of another officer. That press-through form created copies of the complaint for service, and a copy of a warrant. So, in effect, the warrant issued when the police officer swore to another police officer. Now, Ohio implements County of Riverside, the Supreme Court case, that says, let's have a probable cause determination within 48 hours. Ohio implements that in a warrantless arrest quite easily. Make a complaint or an affidavit and get it to a neutral and detached magistrate in 48 hours. And we permit that neutral and detached magistrate to be an independent deputy clerk of courts, perhaps no legal training whatsoever. But within 48 hours, then, by Ohio law, a warrant will issue. And that warrant becomes the basis of continued detention. I would ask this Court to find out from my learned colleague, when did the first determination of probable cause for an arrest by a neutral and detached magistrate take place for Ms. Hobbs? It didn't take place on the filing of the complaint, because on the filing of that complaint, one officer swore before another officer, and the detective testified at the suppression hearing, when I file that with a Barbarian clerk, because I'm a deputy clerk, when I file that, it, quote, becomes the warrant. She was held from September through a determination on motion to suppress. She was detained all of that time without a determination of probable cause by a neutral and detached magistrate. As a claim, there was not, in fact, probable cause. We did not challenge the warrantless arrest for probable cause, but the idea that that warrantless arrest was made with probable cause was not approved by a neutral and detached magistrate within 48 hours. It wasn't determined for five months. My question goes, I mean, in order to determine the applicability of HEC, you've got to figure out the exact parameters of her claim. And the exact parameters of her claim were threefold. Bare bones complaint, a bare bones complaint that is sworn to by one police officer in front of another one. I got that. Here, let me try again. She is not challenging the merits of a probable cause decision in her particular case. No, Your Honor. I'm sorry, I'm so dense. No, and we didn't challenge the original arrest as without probable cause. Let's be serious. I got three police officers who go to the door of her house and say, hi, we got a tip that you did a burglary, and I'm going to say that they didn't, and she said, well, we confessed. They confessed to her right then. I'm going to argue successfully anywhere that they didn't have probable cause for that arrest. Arrest is not the end of the issue of our Fourth Amendment. Arrest and detention have to be pursuant to a determination of probable cause by a neutral and detached magistrate. And usually it happens so easily. We go to a neutral clerk, we fill out our complaint, the clerk clerks it and says, I'm going to issue the warrant based on what you swore to, officer, whether it's bare bones or not. They often issue the warrant. It's done and it's over. And the procedure that was followed here and that multi-part form, which I hear has been stopped, I believe has been stopped, we will, to the day we pass, take credit for that, whether everyone ever gives it to us, I'm so happy it's stopped, they don't do it anymore, and police officers don't act as deputy clerks anymore. And what Ms. Hobbs looks for on her claim is a determination that it's not going to happen again, a determination that doing this was wrong, a determination that you were held without a determination of probable cause, for a period of approximately five months. They argue that, oh no, we made a probable cause determination when we went to the grand jury. And I think we've cited in our brief that grand jury determinations do not retroactively provide probable cause for anything. How long was her detention between the time of arrest and the grand jury indictment? About ten days, Your Honor. And what is she seeking as relief? Well, first declaratory and injunctive relief, that the multi-part form... That's really what she cares about. If they aren't using the form anymore, is the case moot? Oh, no, Your Honor. If this court says, well, gee, that doesn't look like it was bad, that form will be flinging again in 30 seconds, because you can have one cop in front of another cop... Is that this argument? It'll happen again, Your Honor, because it's easy, it's expeditious. I can swear to my sergeant at three in the morning, and he'll issue the warrant. Is there any other relief you're seeking? We were seeking some damages for whatever period of detention was found improper, whether that's the ten days before grand jury indictment, which we don't think is right, or the five months to get a judge to determine, yeah, there was probable cause for her arrest the day we arrested her on a warrantless arrest. It remained per se unreasonable until the judiciary said it was reasonable. And that's the core issue that we have here. Now, as a private attorney general, after five years of this, would I like to also see some reasonable compensation? I'm so tired, I think I'll stretch the definition of reasonable compensation. But that's also a form of relief we're entitled to. We're stopping this. I think that the privilege of representing Ms. Hobbs, who has in her life her own challenges, I think the privilege is at least equal to the privilege of representing what I believe is our Constitution and a fundamental issue of probable cause. And I know this court doesn't, and we shouldn't take that lightly. This procedure has been going on in Summit County through the Sheriff's Department, and please, not the Barberton Municipal Court, because the Barberton Municipal Court might have paid for the forms, but the Sheriff is the one who decided, I'm going to use them. And I'd like to reserve what little time I have remaining to address the cross-appeal. I would point out before we begin that in the cross-appellant's brief, the second brief, they did waive oral argument, not just say they don't think it's warranted. They said, we don't think it's warranted and we waive it. I love the adversarial system. I don't want to stand here and argue we shouldn't hear from them, but let's keep that piece of gristle in our teeth while they argue. Thank you, Your Honors. Thank you, Mr. Ludwig. Good morning. My name is Marvin Evans. I'm Assistant Prosecuting Attorney with Summit County, and I'm representing both the County of Summit and Deputies Scott Plymere and Glenn Stott. Thank you for the opportunity to speak today. First, I do want to address the defendant's cross-appeal related to the extension of time, and then I'll address the merits of Hobbs' appeal, frankly, because if you find that our cross-appeal has merit, then the rest of it becomes moot. This issue was fully briefed, and so I'm not going to repeat what's already been said. It is the County's position, though, that based on 6th Circuit precedent, the District Court abuses discretion in granting the extension under appellate rule 4A-5A. This issue must really be viewed from a public policy and a judicial economy perspective. Parties should be held to the rules of civil appellate procedure unless they're extenuating circumstances. This case kind of exemplifies that. The plaintiff late filed his notice of appeal, actually did that several times, in fact, and we've had multiple appeals already in this case. It's gone up to the 6th Circuit and back to the District Court, and it's frankly wasted considerable time by the District Court, this Court, and the defendants. In this case, there's no indication that the plaintiff was unaware of the issuance of the order that gave rise to the appeal. In fact, the plaintiff twice moved the District Court for extensions before the deadline to file the appeal expired. According to 6th Circuit precedent in Marsh v. Richardson, a miscalculation of a due date is, when there's no ambiguity in the date of the order, is not excusable neglect. And the District Court basically stated this when it was rephrasing the Pioneer case in the order. The District Court's assumption that Hobbs would have timely filed the appeal because of its miscue in its order, it was pure speculation. It's not clear why the plaintiff really filed two motions to extend rather than just filing the motion or filing a notice of appeal. I mean, this has led to extended litigation, which kind of brings me back to the policy reasons for not allowing this type of thing or, frankly, encouraging it of parties to file multiple appeals and extensions and to not be wary of their due dates. This Court also held in March v. Richardson that a miscalculation of dates is not excusable neglect. And it also went on to state that there is no injustice in a dismissal of appeals when an appellant knows exactly when a judgment was entered but fails to perfect that appeal. It's not the duty of the District Court to inform a would-be appellant of the appeal's due date, but it is the duty of the appellant to independently make that determination. Based on these precedents, I'm not going to belabor this point any longer, but we just believe that the District Court did abuse its discretion in finding excusable neglect and allowing this appeal. I'll now turn my attention to the appellant's case. As the Court has already noted, the, frankly, the absence of the, I'm sorry, strike that. Because probable cause did in fact exist, it's really never been challenged. That probable cause does not make a warrant, a constitutional, a defective warrant, a constitutional violation. The plaintiff is asking for declaratory judgment and an injunction. And frankly, for all practical purposes, his point is moot for a couple reasons. One is that multi-part form is no longer being used. And the second is the Ohio Supreme Court in Hobbs' criminal appeal actually ruled on this specific point that Hobbs is trying to ask this court to make a declaration on. In that case, there was a split in the districts as to what a police officer who is also a court clerk could do with respect to signing an affidavit and a warrant. The 8th District in State v. Garrett, which is a 2006 case, appeared to state that under certain circumstances, as long as there was probable cause, that a police officer acting as a deputy clerk of the court could actually sign a warrant. The Ohio Supreme Court took that case and said, and they actually agreed with Hobbs, they said no, the deputy clerk who is also a police officer can't do that. By statute, a police officer who is a deputy clerk may acknowledge complaints and affidavits, but may not issue warrants. So the Ohio Supreme Court actually agreed with Hobbs and has made this proceeding moot. Now, I will be quite honest with the court, that was not argued in our briefs. The Hobbs case actually came out after the court had issued its first order of dismissal of this case based on Heck. This is not the first of this type of case I've been involved in, and I didn't go back and look at at least one other case. I should have, but I have been involved in it. Is there anything in our court's precedent on this point that is useful? I'm thinking we may never have reached the precise issue Mr. Ludwig raises for various procedural reasons. Is my memory of that right? I do not know. It did not involve Summit County. It involved a procedure that another, a similar procedure that another Ohio county was involved in. I don't know. Now the Graves case, which coincidentally was argued yesterday to a different panel in the Sixth Circuit, which has some similar issues, but not precisely this issue. It's not this use of a multi-part form, and frankly in our case we've argued all along that a warrant actually in fact did not issue. Because of the use of this multi-part form that bleeds through automatically when you write on it, I believe that there was actually confusion as to whether a warrant issued. So does that mean there was no probable cause determination made at the outset? There wasn't a probable cause determination made until she was indicted? There was, well that's an issue. It's not clear as to what happened. The officer that signed as a deputy clerk signed the affidavit and that was his testimony at the suppression hearing that happened in the criminal case. He signed the affidavit and the complaint. It appeared that a warrant was then given to the court. The whole form was given to the court. It's not clear whether the deputy, Plymer, who actually made the arrest, did not tell the clerk at the court that no determination had been made and they assumed that one had. But it appears that no warrant was issued. But Hobbs went before. If that's the case, she would have a claim based on her detention prior to finding a probable cause and heck wouldn't have anything to do with that, right? No, based on Webb there was actual probable cause and what's been made in this claim is that there was a defective warrant. Okay. So it was a probable cause because the officers had adequate basis. Yes, based on what they knew at the time of the arrest, which was a direct confession, there was in fact probable cause. There's an issue as to whether an arrest warrant was ever issued. Right, or a defective warrant was issued. And that's what the claim is here, that it's a defective warrant. So based on Webb, because there was actual probable cause, it doesn't rise to the level of a constitutional violation. The remedy there, which was argued all the way up to the Supreme, a high Supreme Court, was that all the evidence should have been suppressed, but the court said there was nothing gathered after the arrest to suppress and they found that it didn't rise to the level of constitutional violation because they upheld both the trial court and the 9th District's upholding of her conviction. Well, yeah, but if you're detained without probable cause, you're going to have, you know, arguably a cause of action for the deprivation of liberty. So it's pertinent. But based on Webb, there was actual probable cause. Whether there was a defective warrant or not, there was in fact probable cause. It's not like this was a situation where you have a defendant that is claiming, I wasn't even there, I didn't have anything to do with it, and there was no probable cause made. She admitted that she did the crime and the officer arrested her based on that. So there was obviously probable cause for the arrest. Let me move on. The other matter that Mr. Ludewick has brought up is the fact that if there is an issue with a defective warrant, that is a matter for the Barberton Court. Summit County has no control over the policies of the Barberton Court. And as he did state, this was a form promulgated by that court. And Deputy Stott, at the time, when he did sign that, and if it was ever determined, the district court didn't make that determination, that a warrant was issued, that would be judicial immunity would apply to that. Because he was acting as a deputy clerk, not as a Again, we get back to the mootness of this. The Ohio Supreme Court has actually ruled at this point that a deputy may not sign a warrant, which we're not claiming that he did, but they've already ruled that in the appeal that went there. Hobbs does rely heavily on the Graves case. The Graves case is factually distinguishable from this case. In that case, the defendants in the criminal case were arrested based supposedly on defective warrants, whereas Hobbs was arrested based on a warrantless arrest because of her confession. She was later indicted by the grand jury and no contest please was entered. And again, the Ohio Supreme Court agreed with Hobbs that deputies must be neutral and it can't be a sheriff's deputy. In order to demonstrate a Fourth Amendment violation, it must be that there was no probable cause, not that there was a defective warrant. I'll refer you to the Webb case. Hobbs has never denied that she voluntarily confessed. And Mr. Ludwig is correct that that form is no longer used. And frankly, given the Ohio Supreme Court case, we don't anticipate that it would be used again because of the confusion it can cause. We'd ask that also the court take into consideration that this case was originally dismissed based on heck. Our motion to dismiss did lay out other grounds for dismissal. One being that the court is responsible for the issuance of warrants. The county is not. We have no control over the Barberton court. And the case of Andrews v. Ohio, which is a Sixth Circuit case, says that this court may affirm a district court case on other grounds, even if it's, as long as it's supported by the record. The Hobbs case that was Ohio Supreme Court case is in the record, is document 61. We did submit that as soon as it came out. So we ask that the court review this case. It is de novo. We believe that the extension of the time to file the appeal was an abuse of time. Alternatively, we ask that the court look at Judge Leoia's dismissal and uphold that, for no other reason, based on the discussions we've had here today. Thank you. Okay. Thank you, Mr. Evans. Your Honor, I always want to run up and say 40 things at once. And I generally don't say any of the things I made note of. Abuse of discretion. A clear error in judgment, an incorrect standard, or a misapplication of the correct standard, or a clearly erroneous finding of fact. I don't think Judge Leoia made any of those mistakes. In your hats as a district judge or as a bankruptcy judge, would you have granted the same motion? Not the standard of review. Unlike de novo, you are asked to be deferential to what Judge Leoia decided. And she did decide that I find that this was excusable neglect. Rule 4 certainly allowed her to do it. The intent of that rule and the intent of this Court's decision in Pioneer is, at the bottom line, let's do equity. The case law precedent of Pioneer and even the case law precedent of Pioneer is, along the way of these multiple appeals where I've burdened this Court, was an appeal of denial of a motion to extend time. Judge Leoia said, I don't have jurisdiction to grant it. There's an appeal pending, which was dismissed, because it was a day late. But I don't have jurisdiction to grant the extension now. In that appeal, 14 number 4567, the county never argued once to this Court, well, you know, Judge Leoia, even if she was wrong in thinking she had no jurisdiction, she couldn't have granted it because there was no showing of excusable neglect or any reason was shown. They could have cross-assigned error then and had this issue of whether our request to extend met the excusable neglect or good cause standard. And they chose to hang their hat on Judge Leoia's decision that we just don't have jurisdiction to decide this. They sat quiet and waited. And this Court said, no, District Court, you do have jurisdiction to decide whether to grant this motion. Then, and only then, months and months after we had made that argument and asked for the extension, do they get leave to respond to a pleading and reply to all three? All of a sudden, now they're replying to one of the two that she granted. Your Honors, you will have a twinkle when you explain to your colleagues that today I heard argument in a case where a notice of appeal was filed in August of 2014 from a decision in February 12. They'll twinkle and go, how did that happen? Well, it happened because a district judge thought she didn't have jurisdiction to do something. And she did. And I don't blame her for being concerned that she doesn't want to interfere with this Court's jurisdiction. But my first appeal that was untimely did not attach jurisdiction to this Court. She had the right to cure that problem. And this Court told her, you can cure it. Please take a look at that issue. And she granted it. If it please the Court, the issue is not moot. And if my learned opponent just conceded an oral argument that our bringing of a case stopped a practice, well, I'll take that for the civil rights action. More importantly, when is the criminal decision, res judicata or not? All of a sudden, gee, it's moot. The criminal decision is decided. We're never going to do it again because a criminal case stops us from doing it. Wait a minute. I thought this Court said in graves, res judicata doesn't apply from criminal findings into a civil rights action. Finally, and although both of us missed it, and I apologize, the outcare decision of this Court in 2003 made it very clear in an operating under the influence case that there has to be a determination of probable cause by a neutrally attached magistrate within 48 hours. I still don't hear when it happened. And it's been five years. Thank you, Your Honor. Okay. Thank you, Counsel, for your arguments today. The case will be submitted and